(No. 95669.—

*In re* A.H. *et al.*, Minors (The People of the State of Illinois, Appellant, v. Tracy H. *et al.*, Appellees).

*Opinion filed November 20, 2003.*

Lisa Madigan, Attorney General, of Springfield, and Joseph E. Birkett, State's Attorney, of Wheaton (Gary Feinerman, Solicitor General, Lisa A. Smith and Linda

Woloshin, Assistant Attorneys General, of Chicago, Norbert J. Goetten, Martin P. Moltz and Lawrence M. Bauer, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, and Margaret M. Healy, Assistant State's Attorney, of counsel), for the People.

James F. McCluskey and Alison J. Lezak, of Momkus, McCluskey, McAndrew & Monroe, L.L.C., of Downers Grove, for appellee Tracy H.

William L. Guild III, of Winfield, for appellee Stacey S.

Patrick T. Murphy, Cook County Public Guardian, of Chicago (Charles P. Golbert and Kathryn O. Gordon, of counsel), for *amici curiae* Office of the Cook County Public Guardian.

JUSTICE FITZGERALD delivered the opinion of the court:

This appeal arises out of the trial court's denial of the State's petition to terminate the parental rights of Tracy H. and Stacey S. The appellate court declined to entertain the State's appeal of the order denying the petition because the order was not a final order, and also declined to consider the appeal under its discretionary authority. 335 Ill. App. 3d 1009. For the reasons discussed below, we affirm the decision of the appellate court.

## BACKGROUND

The natural father, Tracy H., and the natural mother, Stacey S., had two children, J.H., born June 24, 1988, and A.H., born February 26, 1990. In 1996, the father reported to the Department of Children and Family Services that the mother, who had custody of the children, was taking the children with her when she

purchased and used illegal narcotics. In March 1997, the children were adjudicated neglected and removed from the mother's custody and placed with the father.

The trial court, however, removed the children from the father's custody in July 1998 because he had violated a court order prohibiting contact between the mother and the children. The court placed the children in foster care with their paternal aunt and uncle in DeKalb, Illinois. On June 2, 2000, the trial court changed the permanency goal for the mother from "return home" to "substitute care" pending a court determination on the State's petition for the termination of parental rights. The trial court changed the permanency goal for the father from "return home" to "subsidized guardianship" with the paternal aunt and uncle. The trial court further ordered that there be no contact between the mother and the children. The parents appealed this determination, which is not at issue here, and the appellate court did not disturb these rulings in a decision filed on May 18, 2001. Nos. 2—00—0710, 2—00—0711, 2—00—0872, 2—00—0873 cons. (unpublished order under Supreme Court Rule 23).

During the pendency of that appeal, the State filed petitions seeking the termination of the mother's parental rights as to both children. On October 17, 2000, the State filed separate amended petitions for each child seeking the termination of the mother's parental rights and the additional relief of the termination of the father's parental rights. The State further requested that the court "enter such further orders as may be appropriate."

During the unfitness stage of the proceedings, the trial court heard testimony from 20 witnesses called by the State, six witnesses called by the parents, and stipulations to the parents' drug screens and criminal convictions. On August 14, 2001, the trial court found both parents unfit. The parents do not challenge this finding.

During the best-interests stage, the trial court heard testimony from six witnesses, a tape of an interview by counsel with the children, and argument. On October 5, 2001, the trial court held it was not in the best interests of the children to terminate the parental rights of either parent. The trial court ordered "subsidized guardianship" as the permanency goal for the children and continued the cases for a permanency hearing scheduled for February 5, 2002. The trial court further orally admonished the parents that "you still risk possible termination of your parental rights. Because that has not been granted at this time does not mean it could not be granted in the future." The State appealed the trial court's denial of its petition to terminate parental rights.

On appeal, the appellate court considered its jurisdiction *sua sponte* and held that it lacked jurisdiction to decide the matter because the October 5, 2001, order was not final or appealable. 335 Ill. App. 3d at 1013. The court also declined to hear the appeal under its discretionary authority. 335 Ill. App. 3d at 1014, citing 166 Ill. 2d R. 306(a)(5). We allowed the State's petition for leave to appeal (177 Ill. 2d R. 315) and also allowed the Cook County public guardian leave to file an *amicus curiae* brief in support of the State (155 Ill. 2d R. 345).

## ANALYSIS

The State asserts that the appellate court improperly dismissed the appeal because the order was final and appealable under Supreme Court Rules 301 and 303 (155 Ill. 2d Rs. 301, 303). The parents argue that the order appealed from was not final and, therefore, the appellate court properly dismissed the appeal for lack of jurisdiction. Because this appeal presents only issues of law, our review is *de novo*. *In re D.S.*, 198 Ill. 2d 309, 321 (2001).

Except for appeals from delinquency judgments, "[i]n all other proceedings under the Juvenile Court Act [705 ILCS 405/1—1 *et seq.* (West 2002)], appeals from *final*

judgments shall be governed by the rules applicable to civil cases." (Emphasis added.) 134 Ill. 2d R. 660(b). Rule 301 allows appeals from final judgments of a circuit court in a civil case as a matter of right, and Rule 303 sets the time frame for the filing of the notice of appeal after entry of the final judgment. 155 Ill. 2d Rs. 301, 303. "A judgment is considered final 'if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof.' " *In re Curtis B.*, 203 Ill. 2d 53, 59 (2002), quoting *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998). "A final order is one which sets or fixes the rights of a party." *Curtis B.*, 203 Ill. 2d at 59.

Under section 2—13 of the Act, a petition seeking the termination of parental rights and appointment of a guardian with power to consent to adoption may be filed "at any time after the entry of a dispositional order under Section 2—22" (705 ILCS 405/2—13(4) (West 2002)) and "before final closing and discharge under Section 2—31" (705 ILCS 405/2—13(6) (West 2002)). Section 2—13 further provides that "one or more motions in the best interests of the minor may be filed." 705 ILCS 405/2—13(6) (West 2002). Thus, the Act contemplates the filing of more than one petition to terminate parental rights.

Accordingly, the October 5, 2001, order is not final because it did not end the litigation of the parties on the issue of termination of parental rights and did not "set or fix" the rights of the parties on either side of the controversy. Although the order decided the important issue of whether to terminate the parental rights *at that point in time*, such does not, in itself, render the order final. "[T]he fact that an order resolves important issues does not necessarily render it final." *In re Curtis B.*, 203 Ill. 2d at 59. As stated by the trial court, the possibility still exists that the parental rights of the parents could be terminated in the future.

We find inapposite the cases cited by the State in support of its argument that the denial of a petition to terminate is a final order. The State directs our attention to *In re J.B.*, 204 Ill. 2d 382 (2003), and *In re Tekela*, 202 Ill. 2d 282 (2002), cases involving the entry of an order terminating parental rights. An order terminating parental rights and appointing a guardian to consent to adoption is a final order because the specific permanency goal is achieved and there is no need for the issue of termination to be reevaluated under the Act. Indeed, under the Act, "[a]n order so empowering the guardian to consent to adoption deprives the parents of the minor of all legal rights as respects the minor and relieves them of all parental responsibility for him or her, and frees the minor from all obligations of maintenance and obedience to his or her natural parents." 705 ILCS 405/2—29(2) (West 2002). It therefore sets the rights of the parent, who may then appeal. This does not address the situation here, where a petition to terminate parental rights was denied such that the issue could be revisited and the parents retain legal rights with respect to the minors.

We also reject the assertion that an appeal of a denial of a termination petition is necessary to avoid unreasonable delay in the potential adoption of the children causing the children "to remain in limbo for an extended period of time," and contrary to a "prompt, just, and final resolution of their status." *In re D.L.*, 191 Ill. 2d 1, 13 (2000). Such an argument has no bearing on whether the order is "final" for purposes of Rules 301 and 303. The force of the State's argument on this point is also lessened by the State's own prayer for relief in its petition, which lacks a specific request for an order appointing a guardian with the power to consent to adoption. See 705 ILCS 405/2—13(4) (West 2002) ("[i]f termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the

minor under Section 2—29 is sought, the petition shall so state"). The extent of the "delay" of the resolution of the children's potential adoption also depends, therefore, on further petitions for termination of parental rights and appointment of a guardian of the person to consent to adoption.

We lastly note that the appellate court retains the discretion to review an appeal from the denial of a termination petition under Rule 306(a)(5), which permits appeals "from interlocutory orders affecting the care and custody of unemancipated minors, if the appeal of such orders is not otherwise specifically provided for elsewhere in these rules." 166 Ill. 2d R. 306(a)(5). We therefore disagree with *amicus* that "like dispositional orders, if not immediately appealable, an order denying a termination petition could never be reviewed, a result that would be manifestly unfair and dangerous for children." As we stated in *Curtis B.*, "Rule 306(a)(5) maintains the best balance between protecting parental rights and ensuring expeditious resolution of the child's placement status." *In re Curtis B.*, 203 Ill. 2d at 63. Like the review of permanency orders in *Curtis B.*, orders denying petitions for termination of parental rights "which need examination can, and will, be reviewed by the appellate court. The majority of cases, by not being subject to immediate interlocutory review, can proceed in a more timely fashion to determine the permanent placement status of the child." *In re Curtis B.*, 203 Ill. 2d at 63. Here, the State does not appeal the appellate court's denial to take this case under Rule 306(a)(5), and we therefore do not address it.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court dismissing the appeal for lack of jurisdiction.

*Affirmed.*